| | |
|---|---|
| MARIA WOLF, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No.: 18-cv-1416 |
| Plaintiff, ) ) | **CLASS ACTION COMPLAINT** |
| v. ) ) ) | **Jury Trial Demanded** |
| OPTIO SOLUTIONS LLC d/b/a/ QUALIA COLLECTION SERVICES and CAPITAL ONE N.A., ) ) ) ) ) | |
| Defendant. ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Maria Wolf is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Optio Solutions LLC d/b/a Qualia Collection Services ("Optio") is a foreign limited liability company with its principal place of business located at 1444 North McDowell Boulevard, Petaluma, California 94954.

7. Optio does substantial business in Wisconsin and maintains a registered agent for service of process at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. Optio is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Optio is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Optio is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11. Upon information and belief, Defendant Capital One N.A. ("Capital One") issues and administers Kohl's brand credit card accounts. Capital One is a national bank with its principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

12. Capital One does substantial business in Wisconsin.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

14. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

15. Capital One is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

16. Capital One is a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

17. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

18. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/

3

19.     Capital One uses third-party debt collection agencies, including Optio, to collect consumer debts.  Capital One, directly or indirectly, is a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

20.     Any company meeting the definition of a "debt collector" (here, Capital One) is vicariously liable for the actions of a second company collecting debts on its behalf (here, Optio).  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice*, 225 F.3d at 404-05).

## FACTS

21.     On or about April 18, 2018, Capital One mailed Plaintiff a credit card account statement to Plaintiff regarding an alleged debt owed to Capital One for purchases and other charges incurred as a result of the use of her Kohl's-branded credit card.  A copy of this account statement is attached to this Complaint as Exhibit A.

22.     Plaintiff opened and used the Kohl's-branded consumer credit card account referenced in Exhibit A for personal, family, and household purposes only, including purchases of clothing and household goods at Kohl's stores.

23.     Exhibit A contains the following:

| PAYMENT INFORMATION | | |
|---|---|---|
| New Balance | $ | 1,252.34 |
| Payment Due Date | | 05/14/2018 |
| Minimum Payment Due | | 293.00 |
| Amount Past Due | | 221.00 |
| To Avoid Interest Charge Pay | $ | 1,252.34 |

Exhibit A.

24.    Exhibit A states that, as of April 18, 2018, Plaintiff's alleged Kohl's credit card account ending had a "New Balance" of $1,252.34, with an "Amount Past Due" of $221.00, a "Minimum Payment Due" of $293.00," and a "Payment Due Date" of May 14, 2018.

25.    Exhibit A further states:

YOUR ACCOUNT IS CURRENTLY CLOSED.

Exhibit A.

26.    Also on or about April 18, 2018, Capital One mailed a debt collection letter to Plaintiff regarding her alleged Kohl's credit card.   A copy of this letter is attached to this Complaint as Exhibit B.

27.    Exhibit B contains the following:

**Re: Kohl's Credit Card Account # XXX-XXX-2072**

Dear Maria C Wolf,

Our records indicate that a past due amount of $293.00 remains unpaid on your Kohl's Department Store Credit Account referenced above. Your prompt payment of this past due amount is imperative.

Exhibit B.

28.    Exhibit B states that, as of April 18, 2018, "a past due amount of $293.00 remains unpaid" on Plaintiff's Kohl's credit card account.

29.    Exhibit B also contains the following:

THIS IS A LETTER TO COLLECT A DEBT OWED. IF YOU DISPUTE THE VALIDITY OF THE ALLEGED DEBT, PLEASE CONTACT THE CREDIT DEPARTMENT IMMEDIATELY AND WE WILL VERIFY YOUR DEBT. ANY INFORMATION WILL BE UTILIZED FOR THAT PURPOSE.

Exhibit B.

5

30.     On or about April 26, 2018, Optio mailed Plaintiff a debt collection letter regarding Plaintiff's alleged "Kohl's Credit Card Account."  A copy of this letter is attached to this Complaint as <u>Exhibit C</u>.

31.     The alleged debt referenced in <u>Exhibit C</u> was Plaintiff's Kohl's credit card account ending in 2072, which was used only for personal, family, or household purposes.

32.     Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33.     Upon information and belief, <u>Exhibit C</u> is a form debt collection letter, used to attempt to collect alleged debts.

34.     Upon information and belief, <u>Exhibit C</u> was the first letter Optio sent to Plaintiff regarding this alleged debt.

35.     <u>Exhibit C</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or a copy of a judgment against you and have such verification or judgment mailed to you. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

<u>Exhibit C</u>.

36.     <u>Exhibit C</u> also contains the following:

| | |
|---|---|
| Original Creditor: | Chase Bank N.A. |
| Creditor: | Capital One N.A. |
| RE Your Kohl's Credit Card Account #: | ******2072 |
| Agency Account #: | ███3441 |
| Balance: | $1,252.34 |
| Payment Due: | $293.00 |

<u>Exhibit C</u>.

37. <u>Exhibit C</u> states that, as of April 26, 2018, the alleged debt had a "Balance" of $1,252.34 and a "Payment Due" of $293.00.

38. <u>Exhibit C</u> also contains the following:

Your account has been placed with our agency to assist in bringing it current. The creditor to whom the debt is owed is Capital One N.A.. The Balance as of the date of this letter is shown above, however, at this time we are only attempting to collect $293.00, which is the amount necessary to bring your account current at this time. Please note that because of interest, late charges, and other charges that may vary from day to day as permitted by your account agreement and applicable law, if you choose to pay either the Payment Due or the Balance, the amount due on the day you pay may be greater. Hence, if you pay the Payment Due or the Balance, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing your payment. For further information, write to us or call (800) 396-7587.

<u>Exhibit C</u>.

39. <u>Exhibits A, B, and C</u>, together, are false, deceptive, misleading, and confusing to the unsophisticated consumer.

40. The unsophisticated consumer, taking <u>Exhibits A, B, and C</u> together, would be confused about the current account status when Capital One mailed <u>Exhibits A and B</u> on April 18, 2018.

41. The unsophisticated consumer, taking <u>Exhibits A, B, and C</u> together, would be confused about the current account status when Optio mailed <u>Exhibit C</u> on April 26, 2018.

42. There is a difference between the "Past Due Amount" and the "Minimum Payment Due." The "Minimum Payment Due" is the sum of the "Past Due Amount" and the current installment, which is not itself due until the "Payment Due Date."

43. According to <u>Exhibit A</u>, the "past due amount" (i.e., the amount the consumer needs to pay to cure her default as of the date of <u>Exhibits A and B</u>) is $221.00, and the current installment of the "minimum payment" actually becomes "due" on May 14, 2018.

44. According to <u>Exhibit B</u>, the "past due amount" is actually $293.00, which leaves open the possibility that some other, additional amount will become due at the end of the billing cycle.

7

45.     According to Exhibit C, the "Payment Due" is $293.00.

46.     The unsophisticated consumer, taking Exhibits A, B, and C together, would have no way of knowing whether she could cure her default by paying $221.00 (the past due amount stated in Exhibit A) immediately, and paying the current installment of $72.00 on May 14, 2018.

47.     The unsophisticated consumer would have no idea whether the amount she needed to pay to bring her account current on April 26, 2018 was $221.00 (the "past due amount" amount stated in Exhibit A), or $293.00 (the "past due amount" stated in Exhibit B, and the "Payment Due" stated in Exhibit C).

48.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

49.     Thus, under *Barnes*, Optio cannot attempt to collect portions of the balance that are "owed" to Capital One but are not yet "due."  493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

50.     Moreover, there is a difference between the minimum amount due and the past due amount, and Optio's use of the phrase "Payment Due" is confusing and misleading to the unsophisticated consumer because it is inconsistent with the creditor's terminology.  *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n.3 (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

51.     Moreover, the unsophisticated consumer would have no idea how to communicate a dispute.

52.     Exhibit B states that, 'IF YOU DISPUTE THE VALIDITY OF THE ALLEGED DEBT, PLEASE CONTACT THE CREDIT DEPARTMENT IMMEDIATELY AND WE WILL VERIFY YOUR DEBT."

53.     But Exhibit C, mailed less than a week later, states that the consumer can "notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof," and if the consumer does so in writing, that "this office will obtain verification of the debt or a copy of a judgment against you and have such verification or judgment mailed to you."

54.     Further, Exhibit C is mailed under the name "Qualia Collection Services" and does not use the name "Optio Solutions LLC" anywhere in the letter.

55.     There is a corporate entity registered with the Wisconsin Department of Financial Institutions under then corporate name "Optio Solutions LLC" but, upon information and belief, there is no corporate entity registered with the Wisconsin Department of Financial Institutions under the name "Qualia Collection Services."

56.     Upon information and belief, Optio is not licensed to do business in the State of Wisconsin under the name Qualia Collection Services.

57.     Upon information and belief, there is a Wisconsin corporation named "Qualia, Inc." registered with the Department of Financial Institutions. *See* https://tinyurl.com/y7eb3otj.

58.     Upon information and belief and on the investigation of counsel, "Qualia, Inc." is not related in any way to Optio.

9

59.     A debt collector's "'true name' includes the collector's legal name (*i.e.,* the registered corporate or LLC name with the state) as well as the name under which it is licensed to do business." *Boyko v. American Int'l Group, Inc.*, 2009 U.S. Dist. LEXIS 119339, at *20 (D.N.J. Dec. 23, 2009), *reconsideration granted on other grounds, Boyko v. Am. Int'l. Group, Inc.*, 2012 U.S. Dist. LEXIS 81229 (D.N.J. June 12, 2012); *see also, Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1076 (E.D. Calif. May 2, 2008) ("Craighead is liable under this subsection because none of DATS' letters used its true name (DATS) or the name it was registered as doing business under (CSS)."); *McLain v. Head Mercantile Co.*, 2017 U.S. Dist. LEXIS 137499, at *61 (M.D. La. Aug. 28, 2017) ("This is not a bare hypertechnical violation; this is a clear violation in the sense that Defendant represented itself as 'The SOS Group' when it had not registered the name in the state.").

60.     Reviewing Exhibit C, the unsophisticated consumer would not know the debt collector's true name.

61.     A failure by a debt collector to use its true name in collecting a debt is a deceptive practice. Allowing debt collectors to use more than one name would open consumers up to fraudulent and duplicative debt collection, and other abusive collection methods such as intimidating consumers to believe the creditor or debt collector has "ramped up" its collection methods by engaging more than one collector.

62.     Further, the consumer would not know who was actually collecting the debt, and in Optio's situation, the consumer would be confused by Optio's use of the name Qualia when another entity uses that name in Wisconsin.

63.     Optio's conduct has the effect of directing disputes to an unrelated third party. It is likely that even if the consumer discovered that Qualia, Inc. is not Qualia Collection Services,

the 30 day validation period would expire before the consumer could send a dispute to the correct entity.

64.     Optio and Capital One both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and misrepresented the amount of the debt.

65.     Upon information and belief, Optio and Capital One work in a scripted process to collect Capital One debts such as Plaintiff's.

66.     Upon information and belief, Optio is fully aware of the contents and representations in Exhibits A and B.

67.     Upon information and belief, Optio is fully aware that Capital One sends account statements like Exhibit A and debt collection letters in the form of Exhibit B to consumers around the same time Optio mails letters in the form of Exhibit C.

68.     Upon information and belief, Optio is fully aware that its letter is mailed during account billing cycles wherein Capital One has sent a statement to consumers that state the current installment of the minimum payment does not actually become due until several weeks after Optio's letters in the form of Exhibit C are mailed.

69.     Plaintiff was confused by Exhibits A-C.

70.     The unsophisticated consumer would be confused by Exhibits A-C.

71.     Plaintiff had to spend time and money investigating Exhibits A-C, and the consequences of any potential responses to Exhibits A-C.

72.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-C.

11

## *The FDCPA*

73.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a

12

lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

74.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

75.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

76.     15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

77.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

78.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

79.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

80.     15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

81.     15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

82.     The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer.  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

83.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims

14

under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

84.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

85.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

86.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

87.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

88.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

89.     The WCA creates a right for consumers to cure a default under a consumer credit transaction by tendering, within 15 days of notice the default, "the amount of all unpaid installments *due at the time of tender*, without acceleration, plus any unpaid delinquency or deferral charges, and by tendering performance necessary to cure any default other than nonpayment of amounts due." Wis. Stat. § 425.105(2) (emphasis added).

90.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

91.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

92.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

93.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

94.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

95.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

96.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## <u>COUNT I – FDCPA</u>

97.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98.     Count I is brought against Defendant Optio.

99.     <u>Exhibit C</u> states the amount of the debt in a confusing manner by using the term "Payment Due" rather than "Minimum Payment Amount" or "Past Due Amount."

100.    <u>Exhibit C</u> states that the "Payment Due" as of April 26, 2018 was $293.00 but, according to <u>Exhibit A</u>, the actual past due amount as of April 26, 2018 was $221.00.

101.    The unsophisticated consumer would be misled to believe that her account had a past due amount of $293.00 as of the date of <u>Exhibit C</u>.  In fact, as of the date of <u>Exhibit C</u>,

17

Plaintiff could have brought her account current by paying the "Past Due Amount," $221.00, and then paying an additional $72.00 approximately two weeks later.

102.    At a minimum, the consumer would be confused as to whether payment of $221.00 or $293.00 would bring her account current. *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

103.    Optio violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

104.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105.    Count II is brought against Defendant Optio.

106.    Exhibit C is mailed under the name "Qualia Collection Services."

107.    There is a corporate entity registered with the Wisconsin Department of Financial Institutions under then corporate name "Optio Solutions LLC" but, upon information and belief, there is no corporate entity registered with the Wisconsin Department of Financial Institutions under the name "Qualia Collection Services."

108.    Optio is not licensed to do business in the State of Wisconsin under the name Qualia Collection Services.

109.    Optio did not use its "true name" in collecting Plaintiff's debt.

110.    Optio violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(14), and 1692g(b).

18

## COUNT III – WCA

111.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112.     Count III is brought against both Defendants.

113.     Exhibit C states the amount of the debt in a confusing manner by using the term "Payment Due" rather than "Minimum Payment Amount" or "Past Due Amount."

114.     Exhibit C states that the "Payment Due" as of April 26, 2018 was $293.00 but, according to Exhibit A, the actual past due amount as of April 26, 2018 was $221.00.

115.     The unsophisticated consumer would be misled to believe that her account had a past due amount of $293.00 as of the date of Exhibit C.  In fact, as of the date of Exhibit C, Plaintiff could have brought her account current by paying the "Past Due Amount," $221.00, and then paying an additional $72.00 approximately two weeks later.

116.     At a minimum, the consumer would be confused as to whether payment of $221.00 or $293.00 would bring her account current.  *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

117.     Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

118.     Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a credit card account debt owed to Capital One, (d) and in regards to a Kohl's account, (e) which was used for personal, family, or

19

household purposes, (f) where the letter in the form of Exhibit C was mailed between September 11, 2017 and September 11, 2018, inclusive, (g) and was not returned by the postal service.

119.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

120.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

121.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

122.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

123.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

124.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  September 11, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
          John D. Blythin (SBN 1046105)
          Mark A. Eldridge (SBN 1089944)
          Jesse Fruchter (SBN 1097673)
          Ben J. Slatky (SBN 1106892)
          3620 East Layton Avenue
          Cudahy, WI 53110
          (414) 482-8000
          (414) 482-8001 (fax)
          jblythin@ademilaw.com
          meldridge@ademilaw.com
          jfruchter@ademilaw.com
          bslatky@ademilaw.com